**Vincent J. PROWELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A04–0204–CR–160.**

Court of Appeals of Indiana.

May 9, 2003.

Jon Aarstad, John Andrew Goodrich, Evansville, IN, Attorneys for Appellant.

Stephen R. Carter, Attorney General of Indiana, Indianapolis, IN, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Vincent J. Prowell (Prowell) appeals his conviction of two counts of murder. Ind.Code § 35–50–2–3.

We affirm.

### ISSUE

Prowell presents one issue for our review which we restate as two:

I. Whether the trial court erred in sentencing Prowell.

II. Whether Prowell's sentence is inappropriate.

### FACTS AND PROCEDURAL HISTORY

As our supreme court set forth in Prowell's appeal of the denial of his petition for post-conviction relief, the facts of this case are as follows:

In November 1992, twenty-eight-year-old Vincent Prowell moved from Chicago to Evansville to live with his mother, Karen Johnson, and her boyfriend, Ed Cooper. Although Prowell had never seen or been treated by a mental health professional, those who spent time with him suspected that something was "seriously wrong" with Prowell. A number of people heard Prowell engage in conversations with himself while alone in his bedroom, talk to the television set when it was turned off, respond to questions with odd or indirect answers, drift off on incomprehensible conversational tan-

gents, and appear fearful of and threatened by others.

In April 1993, Johnson and Cooper were arrested on drug charges, convicted, and sentenced to prison terms. Prowell, who was unusually dependent on his mother and had never before lived alone, moved into an apartment that Cooper had rented for him. Prowell's next door neighbor in the apartment complex was Powers.

On May 23, 1993, Powers sat in her automobile waiting for Fillbright. As Fillbright approached the driver's side door, Prowell shot him at close range in the back of the head. Prowell then shot Powers twice through the car window, piercing her lung and heart. An eyewitness identified Prowell as the shooter. A few hours later, Prowell was apprehended by police in Benton County, Indiana and confessed to both murders. Prowell also claimed that earlier that evening he had run into Fillbright, whom he had never met before, near the apartment complex's mailboxes. He told police that Fillbright had been hostile towards him for no reason, "acting all kinds of crazy" towards Prowell, with a "military look in his eye," and slinging racial slurs and "insinuation." In his confession, Prowell told Police that he felt "threatened" by Fillbright and responded by getting his gun from his apartment and confronting Fillbright in the parking lot. Neighbor Joann Rose testified that Prowell approached Fillbright, shot him once from behind without any exchange of words, and then "pivoted" around to shoot twice through the passenger window.

*Prowell v. State*, 741 N.E.2d 704, 706–07 (Ind.2001) (footnote and citation omitted).

Prowell pleaded guilty, without a plea agreement, to the murders of Powers and Fillbright, and the trial court sentenced him to death. Prowell appealed, but our supreme court affirmed the trial court's judgment and imposition of the death sentence. Prowell then filed a petition for post-conviction relief which was denied by the post-conviction court. Prowell appealed that decision, and our supreme court reversed the judgment of the post-conviction court and ordered a new trial. This time, Prowell entered a plea of guilty but mentally ill to two counts of murder pursuant to a plea agreement that called for sentencing to be argued to the trial court with a sentence cap of one hundred years. The trial court sentenced Prowell to consecutive terms of fifty years on each of the two counts for the maximum sentence under the plea agreement. It is from this sentence that Prowell now appeals.

## DISCUSSION AND DECISION

### I. SENTENCING STATEMENT

Prowell contends that the trial court erred in determining his sentence. Specifically, Prowell argues that the court did not identify all significant mitigating circumstances in that the trial court failed to identify Prowell's mental illness as a mitigating factor. Further, Prowell claims the trial court failed to consider what mitigating weight to assign to his mental illness and instead used the mental illness as an aggravating circumstance to impose enhanced, consecutive sentences.

Sentencing is a determination within the sound discretion of the trial court, and we will not reverse the trial court's decision absent an abuse of discretion. *Allen v. State*, 722 N.E.2d 1246, 1250 (Ind.Ct.App.2000). If a trial court imposes a sentence based upon aggravating or mitigating circumstances, it must include in the record a statement of its reasons for selecting a particular sentence. Ind.Code § 35–38–1–3. The following elements must be included in the court's sentencing

statement: (1) all significant aggravating and mitigating circumstances; (2) the reason why each circumstance is determined to be mitigating or aggravating; and (3) a demonstration that the mitigating and aggravating circumstances have been evaluated and balanced. *Allen,* 722 N.E.2d at 1250–51.

 With respect to mitigating factors, it is within a trial court's discretion to determine both the existence and the weight of a significant mitigating circumstance. *Id.* at 1251. Given this discretion, only when there is substantial evidence in the record of significant mitigating circumstances will we conclude that the sentencing court has abused its discretion by overlooking a mitigating circumstance. *Id.* Although the court must consider evidence of mitigating factors presented by a defendant, it is neither required to find that any mitigating circumstances actually exist, nor is it obligated to explain why it has found that certain circumstances are not sufficiently mitigating. *Id.* at 1252. Additionally, the court is not compelled to credit mitigating factors in the same manner as would the defendant. *Id.* Moreover, when the court finds aggravating and mitigating circumstances and performs the balancing process, the balancing test is generally qualitative and need not be quantitative. *Archer v. State,* 689 N.E.2d 678, 684 (Ind.1997). "Thus, even where a sentencing court finds a mitigating circumstance such as a mental illness exists, it generally need not assign a substantial positive or numerical value to the circumstance." *Id.*

 These fundamental principles of sentencing are not altered by the fact that Prowell pleaded guilty but mentally ill. Indeed, our legislature has specifically stated that a defendant who pleads guilty but mentally ill shall be sentenced in the same manner as a defendant who is found guilty of the offense. Ind.Code § 35–36–

2–5(a). Thus, Prowell, and other defendants who plead or are found guilty but mentally ill, are "not automatically entitled to any particular credit or deduction from his otherwise aggravated sentence because he is guilty but mentally ill." *Archer,* 689 N.E.2d at 684. Nonetheless, our supreme court has directed trial courts to, at a minimum, carefully consider on the record what mitigating weight, if any, to allocate to any evidence of mental illness, even though the court is not obligated to give the evidence the same weight as does the defendant. *Weeks v. State,* 697 N.E.2d 28, 30 (Ind.1998).

 In addition, our supreme court has outlined four factors that a trial court should consider in determining what weight, if any, to assign to a defendant's mental illness in sentencing. We pause here to note that the statutory definition of "mentally ill" is: "having a psychiatric disorder which substantially disturbs a person's thinking, feeling, or behavior and impairs the person's ability to function" and includes having any mental retardation. Ind.Code § 35–36–1–1. Bearing in mind this definition, we turn to the four criteria: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Weeks,* 697 N.E.2d at 30 (*citing Archer,* 689 N.E.2d at 685). Although to date these are the only factors our supreme court has specifically delineated for consideration by the trial courts, they are not exclusive. *Smith v. State,* 770 N.E.2d 818, 823 (Ind.2002).

 Applying these factors here, we find that the trial court did not err in sentencing Prowell. The trial court's sentencing statement indicates the court

reached its conclusion with regard to Prowell's sentence after considering the criteria outlined by our supreme court. In its oral statement at the sentencing hearing, the trial court explicitly found Prowell's lack of criminal history as a mitigating circumstance. The court also listed as aggravating circumstances the nature and circumstances of the crime (i.e., execution style murders), the need for correctional treatment that can best be provided by a penal facility for an extended period of time, and the substantial risk that Prowell would commit another crime of this nature. The court then considered Prowell's mental illness as a mitigating factor by considering the testimony of Dr. Bailey, a psychiatrist who examined Prowell for a period of five hours. Dr. Bailey diagnosed Prowell with chronic paranoid schizophrenia and testified that Prowell had a paranoid fear of being threatened although no one may have done or said anything to him. (PCR Tr. 271 and 392; 296–97). Thus, Prowell's disorder directly affects his ability to control his behavior. For example, his perception of encounters with other people can be so exaggerated that it might lead him to kill the other person, as was the situation in this case. (PCR Tr. 297–99). Dr. Bailey obviously believed that Prowell's paranoid fear of being threatened caused him to be unable to control his behavior because he further testified that he "would not recommend that [Prowell] be in society again," (PCR Tr. 356) and that:

> I think it is very clear, and if I haven't been clear, I want to make it very clear, once a guy has shot people, I don't think you can ever again say this is a guy who will not shoot people. It is absolutely my testimony today that he needs to be in a controlled environment for the rest of his life and I hope I said that indirectly. If not, I will say it directly. I don't think that a psychiatrist can say that any treatment or any whatever, can ever

get this guy to the point where you can say, "I feel comfortable that he would never shoot anybody again." So, you have to argue that you are going to put him in a controlled environment, like a prison setting, for life.

(PCR Tr. 381).

■ Not only is Prowell limited in how he functions and interacts with other people, but also in his care of himself. Dr. Bailey testified that Prowell is emotionally immature and was overly involved with his mother. For instance, at age nineteen, Prowell was sleeping in the same bed as his mother. (PCR Tr. 315–16). In addition, when Prowell was in his late twenties, he could not take care of his own affairs, so his mother's boyfriend helped him obtain an apartment, a car and furnishings for his apartment. (PCR Tr. 317). Prowell's level of functioning took a further downward turn when his mother was arrested, and his personal hygiene began to wane. (PCR Tr. 318).

■ Dr. Bailey further suggested that it would be very difficult for Prowell to engage in any job that required him to make decisions, speak in public, or finish tasks on a strict time schedule. (PCR Tr. 340). He indicated that these types of things would cause Prowell too much stress and would be too anxiety provoking for him. (PCR Tr. 340 and 348). Dr. Bailey also testified that the overly structured environment of prison is the best setting for Prowell because the stress is removed. No one depends on him to do anything, no one really expects anything of him, and the prison officials tell him what to do and when to do it. (PCR Tr. 347–48). In addition to the foregoing, Dr. Bailey provided further evidence regarding the duration of Prowell's illness, the third factor set out by our supreme court. He testified that Prowell's grandmother had told his mother to get him help but that

his mother continued to refuse to acknowledge the problem. (PCR Tr. 334).

██ Finally, beyond the general information that Prowell felt threatened and misinterpreted situations to the point of killing, there was specific evidence presented, via Dr. Bailey's testimony, regarding the nexus between Prowell's disorder and the commission of the two murders. Dr. Bailey stated that although people with mental illnesses can do bad things aside from their mental illness, he believes that Prowell's mental illness contributed to his murder of these two people. (PCR Tr. 306 and 392). One indication of this is Prowell's lack of criminal history. Dr. Bailey indicated that generally criminal behavior is developed and does not just "pop up over night." (PCR Tr. 342).

In its sentencing statement, the trial court quoted from a portion of Dr. Bailey's testimony to support the aggravating circumstance of the likelihood that Prowell will commit another crime and the consideration of the need for correctional treatment provided by long-term commitment to a penal facility. Dr. Bailey's testimony indicated that he was very concerned that Prowell would commit murder again, and he stated Prowell should not ever be in society again. (PCR Tr. 353–54 and 356). The court's sentencing statement indicates that the trial court considered Prowell's mental illness as a mitigating circumstance, but the psychiatrist's testimony that Prowell should never again be in society due to the likelihood that he would murder again clearly outweighed any mitigating weight of Prowell's illness.

Thus, with regard to Prowell's assertion that the sentencing court failed to find that his mental illness was a mitigating circumstance, we disagree. The court's oral statement at the sentencing hearing reveals the court's acceptance of Prowell's pleas of guilty but mentally ill, which requires the court to make a finding that Prowell was guilty but mentally ill at the time of the offense. Moreover, as we stated above, the court based its sentencing of Prowell on the threat Prowell represents to society. The court weighed the circumstances and found that the aggravators clearly outweighed the mitigators of mental illness and lack of criminal history. *Cf. Powell v. State,* 751 N.E.2d 311 (Ind.Ct. App.2001) (trial court specifically rejected considering defendant's mental illness evidence during sentencing).

## II. INAPPROPRIATE SENTENCE

Although Prowell asserts that his sentence is manifestly unreasonable, we now review sentences pursuant to the "inappropriate" standard.[1] Under Article VII, Section 6 of the Indiana Constitution, we have the constitutional authority to review and revise sentences. However, we will not do so unless the sentence imposed is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

██ The phrase "nature of the offense" refers to the presumptive sentence for the class of crimes to which the offense belongs. *Williams v. State,* 782 N.E.2d 1039, 1051 (Ind.Ct.App.2003). The pre-

---

**1.** On July 19, 2002, our supreme court amended Indiana Appellate Rule 7(B) and provided that the amendment would be effective January 1, 2003. The rule is directed to the reviewing court and sets forth the standard for review that is in effect at the time the reviewing court's decision or opinion is handed down. Therefore, although the sentence here was imposed prior to January 1, 2003, we apply the new rule. The amended rule provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

sumptive sentence is the starting point for the Court's consideration of the appropriateness of the particular sentence. *Id.* In this case, judgment was entered against Prowell on two counts of murder which, in 1993, had a presumptive sentence of forty (40) years to which twenty (20) years could be added for aggravating circumstances or ten (10) years subtracted for mitigating circumstances. Ind.Code § 35–50–2–3 (West Supp.1992). Thus, Prowell's sentence of fifty (50) years on each count of murder, although the maximum total sentence allowed under his plea agreement, was not the maximum lawful sentence allowed at the time for the crime of murder. Thus, with regard to the nature of the offense, Prowell's sentence is not one that requires revision.

■■■ As for the character of the offender, the Court is guided by the sentencing considerations in Ind.Code § 35–38–1–7.1 which contains general sentencing considerations, as well as aggravating and mitigating factors to consider, and factors within the court's discretion. *Martin v. State,* 784 N.E.2d 997, 1013 (Ind.Ct.App. 2003). Under subsection (a), the trial court considers, among other things, the nature and circumstances of the crime, the defendant's criminal history, and the risk that the person will commit another crime. Here, the murders were what the trial court termed "execution-style." In addition, although Prowell lacked a criminal history, the trial court quoted Dr. Bailey's testimony regarding the high risk that Prowell would murder again and the fact that Prowell should never be in society again. Under these facts and circumstances, we cannot conclude that Prowell's one hundred year sentence is inappropriate in light of the nature of the offense and the character of the offender.

## CONCLUSION

Based upon the foregoing discussion and authorities, we conclude that the trial court not only considered Prowell's mental illness in sentencing Prowell but also considered his mental illness as a mitigating factor. However, the mitigating factors in this case were far outweighed by the aggravating factors, and the trial court did not err in sentencing Prowell. Additionally, Prowell's sentence is not inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

KIRSCH and DARDEN, JJ., concur.