**Amy BOSTICK, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 33A01–0308–CR–281.**

Court of Appeals of Indiana.

March 4, 2004.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

FRIEDLANDER, Judge.

In March 1998, Amy Bostick locked her three children, all under the age of five, in their bedroom, poured flammable liquid in and around their room, and ignited the liquid. All three children died from smoke inhalation and thermal burns. At the time, Bostick was involved in an extramarital affair with a teenage boy, who was fifteen when their sexual relationship began. Bostick presents a single issue for review: Is her 210 year sentence appropriate?

We affirm.

The facts most favorable to the judgment demonstrate that on the evening of March 15, 1998, Bostick, formerly Amy Robinson, was at home with her three children, Jason Michael Robinson, age one year and eight months, Ashley Joy Robinson, age two years and ten months, and Jessica Nicole Robinson, age four years and six months. Bostick's teenage lover, Jacob Gulley, was also in the home asleep in Bostick's bedroom. Gulley and Bostick had begun a sexual relationship in December 1997 when Gulley was fifteen and Bostick was twenty-four. At the time, Bostick was still married to her children's father, but had recently filed for divorce. As her romantic relationship with Gulley developed, Bostick began to lose interest in her children. Bostick had told Gulley that she did not want to work but had to in order to provide for the children. She had also spoken of marrying Gulley and moving to a new town.

During the early morning hours of March 16, Bostick locked the front and back door of her house and poured a flammable liquid on the closet floor of the bedroom where her three children were sleeping. Bostick then locked the children in their bedroom by securing a belt to the door handle and attaching the belt to a hook on the wall outside the room.[1] She proceeded to pour flammable liquid along a common wall of the children's bedroom and an adjacent room before igniting the

---

1. Bostick regularly locked the children in their bedroom when they were sleeping or playing. In the past, Bostick had also utilized a weighted belt contraption to secure the children in their room. Bostick would attach the belt to the door handle, attach the belt to a suitcase, and then move the suitcase away from the door to pull it shut. The children would be unable to open the door due to the weight of the suitcase.

fire.[2] After the blaze had begun, Bostick awoke Gulley, informed him the house was on fire, and then ran out the backdoor. Gulley, along with the police and firefighters who eventually arrived at the scene, unsuccessfully attempted to rescue the children. A fireman later located the charred remains of the three children in their bedroom.

On July 28, 1998, Bostick was charged with three counts of Murder,[3] a felony, Arson,[4] a class A felony, and Sexual Misconduct With a Minor,[5] a class B felony. The State requested Bostick receive a life sentence without the possibility of parole for each of the three murders, based on the aggravating circumstance that each victim was under twelve years of age. After a three-week jury trial, Bostick was convicted on all counts. During the sentencing phase, however, the jury could not reach a decision regarding the life without parole sentences and was discharged. On October 18, 1999, the trial court entered its written sentencing statement wherein it vacated Bostick's arson conviction on double jeopardy grounds, imposed life imprisonment without parole on each of the three murder convictions, and sentenced Bostick

to a concurrent fifteen-year term for her sexual-misconduct-with-a-minor conviction.

On direct appeal to our supreme court, Bostick's convictions were affirmed but the court vacated the life without parole sentences and remanded for new sentencing proceedings on the three murder convictions. *See Bostick v. State*, 773 N.E.2d 266 (Ind.2002).[6] Thereafter, the trial court granted the State's motion to dismiss its request for life sentences without parole, and held a resentencing hearing on July 3, 2003.

At the resentencing hearing, the trial court heard victim impact testimony from several relatives of the children including their father, Jason Robinson. The trial court also heard testimony from Joann King, Bostick's probation officer, regarding, inter alia, Bostick's completion of college coursework, receipt of counseling, and participation in Alcoholics Anonymous.

After argument from counsel, the trial court issued its ruling, which included a detailed review of the sentencing considerations contained in Ind.Code Ann. § 35–38–1–7.1 (West, PREMISE through 2003 1st Regular Sess.). The trial court first considered the mandatory statutory fac-

---

**2.** Four separate fire investigators examined the scene of the fire and each identified the two separate origin points of the fire.

**3.** Ind.Code Ann. § 35–42–1–1(1) (West, PREMISE through 2003 1st Regular Sess.).

**4.** Ind.Code Ann. § 35–43–1–1(a)(2) (West, PREMISE through 2003 1st Regular Sess.).

**5.** I.C. § 35–42–4–9(a)(1) (West, PREMISE through 2003 1st Regular Sess.).

**6.** In its decision, our supreme court applied the United States Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which held that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), applied to capital sentencing schemes and that the Sixth Amendment requires that "any fact that in-

creases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. at 490, 120 S.Ct. 2348. Therefore:

> Contrary to *Apprendi* and *Ring*, the defendant's sentences to life without parole pursuant to Ind.Code § 35–50–2–9, were based on facts extending the sentence beyond the maximum authorized by the jury's verdict finding her guilty of murder. Because of the absence of a jury determination that qualifying aggravating circumstances were proven beyond a reasonable doubt, we must therefore vacate the trial court's sentence of life without parole.

*Bostick v. State*, 773 N.E.2d at 273–74 (footnote omitted).

tors of I.C. § 35–38–1–7.1(a) and then the permissive aggravating factors in I.C. § 35–38–1–7.1(b):

The first of the mandatory considerations for the Court is what is the risk that the defendant would commit another crime. This Court finds that based on the sheer nature of the crime here, that being a crime of Murder, involving three children, her own children, that it leads me to conclude that there is a high risk she would commit another crime. Nature and circumstances of the crime committed is number two that I'm supposed to consider. There have been a variety of comments made both today and in October of 1999 about the nature and circumstance of that. The mother and child relationship is without a doubt one of the most special relationships that there is. I think those of us who did sit through the trial can recall that we are talking about children who were still wearing diapers in some instances. Children who could not adequately fend for themselves. Children who depended upon their custodial parent for food, their clothing, their shelter, their everyday needs and their protection from the rest of the world. That special relationship I considered to be a part of the nature and circumstance of the offense committed here. I rest in large part upon the Court's previous findings as to several of the things that I announced in October of 1999. One of those was that the Court found that there was almost no prior criminal record and the Court now finds that that's the case here as well. As far as character, the Court assesses that as questionable and bases that assessment upon two factors in addition to the offense itself. And that is your involvement with a fifteen year old in a sexual relationship, as well as persistent substance abuse that was shown in the Pre Sentence Report that was considered by the Court in 1999, on a daily basis. As far as condition, I'm not sure whether I'm supposed to assess between 1999, 98, at the time of the offense or now. As far as the record is concerned, I find your record to be pretty good as of now. Number four that the Court is supposed to consider is the age of the victims. The evidence that established or was presented to the Court at trial, the Court previously found to have established beyond a reasonable doubt, include the following dates of birth for the children. Jessica's date of birth was August 22, 1993. Ashley's date of birth was April 27, 1995 and Michael's date of birth was June 26, 1996. So clearly those dates of births support the Court's finding that each of the children were [sic] under the age of twelve. There is no evidence in the case with respect to violation of any Protective Order. And item number six is that the Court shall consider any oral or written statement made by a victim in the, of the crime. And the Court has considered the statements made by the extended family members, both in writing in 1999, testimony which the Court had reviewed from the 1999 hearing, as well as the testimony that has been presented to the Court here today. The Court finds that a number of matters have been presented and argued with respect to aggravating and mitigating circumstances. The Court finds that the aggravating circumstances listed under (b)(3), that the person is in need of correctional or rehabilitative treatment that can best be provided by commitment to the person, of the person to a penal facility to be appropriate in this case. The Court cannot conceive that correctional or rehabilitative treatment in an offense as serious as this can be provided in any other setting other than

a penal facility. The Court finds that the aggravating factor listed under number five, as I have already found above exists and that is that all three, Jessica, Ashley and Michael, were under the age of twelve at the time that the offense was committed in this case.

*Transcript* at 68–72. Next, the trial court considered the mitigating factors enumerated in I.C. § 35–38–1–7.1(c):

> With respect to mitigating circumstances, I've considered under the statute as I have already commented under the mandatory section, that the person has little history of delinquency or criminal activity and had led what would be considered to be a law-abiding life for a substantial period of time before the commission of the crime. Under subparagraph (d) of this statute, it states that the criteria listed in subsections (b) and (c) do not limit the matter that the Court may consider in determining the sentences. Therefore, the Court has considered those matters which have been presented by the defendant as mitigating matters. The Court adopts its previously announced finding with respect to age. That it is mildly mitigating. That the defendant's expression of grief is mildly mitigating.

*Transcript* at 72–73. The trial court also extensively addressed the alleged mitigators of extreme mental disturbance and inability to conform conduct to the law. After summarizing testimony from various doctors and witnesses on the issues, the trial court concluded that any mental disturbance could not be characterized as extreme "and thus not more than mildly mitigating." *Transcript* at 76. The trial court also rejected the claimed mitigator that Bostick was unable to conform her conduct to the law, then addressed the remaining mitigators:

> With respect to the claimed mitigators that this was uncharacteristic behavior, it may be uncharacteristic with respect to the defendant's prior conduct. I don't think though that it amounts to a mitigating circumstance here. Finally, argument has been made with respect to the defendant's attempts to better herself since her incarceration. I compliment her on those steps. In some respects, as counsel has been careful to point out, that was during a time when it probably didn't make much difference to you, under the sentence that you were facing at the time. But the Court believes that those attempts and steps towards self improvement and whatever benefit they may grant to you, should be better left to the Department of Correction under their guidelines to determine when and if you are entitled to reduction of sentence based on the statutes and rules for achieving various education levels, as well as other things that may apply.

*Transcript* at 77–78. After the foregoing review of the aggravators and mitigators, the court concluded:

> Having commented on the aggravating and mitigating circumstances, it is incumbent upon the Court to announce its findings with respect to a balancing of the aggravators and the mitigators. And I turn to what is a two sentence comment that I made in the previous Sentencing Statement I believe still applies now. And that is a child of the age of one year in Count I or two years as charged in Count II, or four years as charged in Count III, clearly depends upon a parent with whom that child resides, not only to provide for their daily needs, but also for protection from harm. A violation of that special trust at the hands of that person clearly outweighs a lack of criminal history, the stresses of a marriage gone bad, finan-

cial difficulties, and the pressures of raising and providing for a family. In sum, the Court finds that the aggravator in this instance in each of the three Counts clearly outweighs the mitigators, calling for an aggravated sentence. Therefore, this Court does now on Count I, for the Murder of Jason Michael, who the Court finds to have been age one, sentences the defendant to the Indiana Department of Correction for a term of sixty-five years. On Count II, the charge of Murder of Ashley Jo Robinson, who the Court finds to have been two years of age on the date of the offense, sentences the defendant to the Indiana Department of Correction for a term of sixty-five years. On Count III, on a charge of Murder of Jessica Nicole Robinson, who the Court finds to have been age four at the time of the offense, the Court now sentences the defendant to the Indiana Department of Correction for a term of sixty-five years. On the question of whether or not the sentences should be served concurrently or consecutively, the Court finds that each Count, I, II, and III, is an act of violence as defined by statute. The Court further finds that the evidence establishing an aggravating circumstance as detailed by the Court by announcing what I found to have been the dates of birth of each of the children, each having been under the age of twelve years. It will then be the Order of the Court that each Count shall be served consecutive to the other and that each of these shall be served con-

secutive to the sentence previously announced on Count V, which was fifteen years for Sexual Misconduct With a Minor.

*Transcript* at 78–80. Thus, the trial court imposed an aggregate 210 year sentence.

On appeal from the resentencing, Bostick claims that a 210 year sentence is inappropriate in light of the nature of these offenses and Bostick's character. Bostick claims that the trial court failed to afford her any benefit from the "significant mitigating circumstances present," *Appellant's Brief* at 14, specifically her age and lack of a criminal record. While Bostick does not challenge the enhanced sixty-five year sentence she received on each of her murder convictions, she seeks to have those sentences served concurrently, rather than consecutively, so that with good time credit she has the possibility of being released from prison during her lifetime.[7]

 Our standard of review in reviewing sentencing decisions is well settled. Determination of the appropriate sentence is within the trial court's discretion, and we will reverse only upon an abuse of discretion. *Sipple v. State*, 788 N.E.2d 473 (Ind.Ct.App.2003). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *McRoy v. State*, 794 N.E.2d 539 (Ind.Ct.App.2003). In order for a trial court to impose enhanced or consecutive sentences, it must (1) identify the significant aggravating factors and mitigating

---

7. Bostick does not argue that her enhanced sentence for each of her murder convictions should be reduced, but she does assert that the trial court's treatment of two aggravating factors was erroneous: (1) the trial court failed to provide a proper basis for finding that Bostick is a person in need of correctional or rehabilitative treatment that can best be provided by commitment of the person to a penal facility, pursuant to I.C. § 35–38–1– 7.1(b)(3); and (2) the trial court's finding that there was a high risk Bostick would commit another crime was contrary to the evidence. We need not address these arguments, however, since the trial court solely relied upon the victim's age and the nature of the offense in imposing the 210–year sentence. Thus, even assuming the trial court's treatment of these factors was somehow inadequate, such did not affect Bostick's sentence.

factors; (2) relate the specific facts and reasons that the court found to those aggravators and mitigators; and (3) demonstrate that the court has balanced the aggravators with the mitigators. *Veal v. State,* 784 N.E.2d 490 (Ind.2003). While a sentencing court must consider all evidence of mitigating circumstances presented by a defendant, the finding of mitigating circumstances rests within the sound discretion of the court. *Bacher v. State,* 722 N.E.2d 799 (Ind.2000). Moreover, a sentencing court need not agree with the defendant as to the weight or value to be given to proffered mitigating facts. *Id.* Indeed, a sentencing court is under no obligation to find mitigating factors at all. *Echols v. State,* 722 N.E.2d 805 (Ind.2000).

Here, the trial court considered a number of aggravating circumstances, but found that the age of the victims and the nature of the crime "clearly outweighs" the mitigators. *Transcript* at 79. Therefore, the trial court imposed enhanced and consecutive sentences. Bostick does not dispute that these two factors were significant aggravators, rather, she asserts that the trial court failed to properly balance them against the mitigators of her age and lack of criminal history. We disagree.

■ "Age is neither a statutory nor a per se mitigating factor." *Monegan v. State,* 756 N.E.2d 499, 504 (Ind.2001). Moreover, Bostick was twenty-four years old when she locked her children in their bedroom and set her house on fire. Twenty-four is well past the age that our courts have afforded special consideration. *See, e.g., Corcoran v. State,* 774 N.E.2d 495, 500 (Ind.2002) (holding that age of defendant, twenty-two, was "well past the age of sixteen where the law requires special treatment"); *Monegan v. State,* 756 N.E.2d 499 (holding that trial court did not err in

failing to give significant weight to the age of an almost eighteen-year old defendant); *Ketcham v. State,* 780 N.E.2d 1171 (Ind.Ct. App.2003) (holding that failure to give mitigating weight to defendant's age, twenty, at the time of the crime was not error).[8] Bostick was the head of a household and primary care-taker to three young children. She was not a naïve child or immature teenager, but an adult able to take responsibility for her actions. Bostick's age does not require special mitigating weight, and the trial court's failure to consider her age as a significant mitigating factor was not an abuse of discretion.

■ Bostick also contends that the trial court erred in failing to give significant mitigating weight to her lack of criminal history. A trial court must consider all evidence of mitigating factors presented by the defendant, but it is not obligated to agree with the defendant on the weight or value given to each mitigator. *See Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998) ("[a]s it was entitled to do, the trial court considered [defendant's] lack of prior criminal history but declined to accord it significant weight"). The trial court correctly noted Bostick's lack of criminal history, but also pointed to evidence of her substance abuse and sexual relationship with a fifteen-year-old boy. These issues led the trial court to consider her character "questionable," *Transcript* at 70, and demonstrated that Bostick was leading a less than law-abiding life. The trial court's failure to give substantial weight to Bostick's lack of criminal history was not an abuse of discretion.

■ In addition to challenging the appropriateness of her sentence based on mitigating factors, Bostick contends that

---

**8.** Indeed, the case Bostick cites in support of her contention involved a sixteen-year-old girl. *Loveless v. State,* 642 N.E.2d 974 (Ind. 1994).

the "key question under these difficult set of facts and circumstances is whether the aggravating circumstances in this case are so overwhelming that it is appropriate that [Bostick] should be denied any hope of ever being released from prison?" *Appellant's Brief* at 23–24. She is mistaken. In reviewing the appropriateness of Bostick's sentence, we have the authority to revise a sentence if, after "due consideration" of the trial court's decision, we find that the sentence is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B); *see also Krumm v. State*, 793 N.E.2d 1170 (Ind.Ct.App.2003). Our review is *not* guided by whether Bostick will live long enough to see her release date.

■■■ "The phrase 'nature of the offense' refers to the presumptive sentence for the class of crimes to which the offense belongs." *Prowell v. State*, 787 N.E.2d 997, 1004 (Ind.Ct.App.2003). The presumptive sentence for murder is fifty-five years with a possibility of enhancement of up to ten years. *See* Ind.Code. Ann. § 35–50–2–3(a) (West, PREMISE through 2003 1st Regular Sess.). Based on the mandatory statutory aggravator of the age of the victims, as well as Bostick's violation of a position of trust, she received an enhanced sixty-five-year sentence for each murder conviction. The age of the victims also led the trial court to impose the sentences consecutively. A single aggravating circumstance may be sufficient to support an enhanced sentence and to impose consecutive sentences. *Cox v. State*, 780 N.E.2d 1150 (Ind.Ct.App.2002). "In cases involving multiple killings, the imposition of consecutive sentences is appropriate." *Scruggs v. State*, 737 N.E.2d 385, 387 (Ind. 2000). As our supreme court recently held: "enhanced and consecutive sentences seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person." *Serino v. State*, 798 N.E.2d 852, 857 (Ind.2003). The 210–year sentence is appropriate in light of the nature of the offense.

■■■ Regarding the character of the offender, the court should be guided by the statutory considerations of I.C. § 35–38–1–7.1, aggravating and mitigating factors, and other factors within the court's discretion. *Prowell v. State*, 787 N.E.2d 997. As detailed by the trial court, the nature and circumstances of Bostick's offense were truly heinous. She locked her three young children, two of whom were still in diapers, in their bedroom and then deliberately set the house on fire. The children died of smoke inhalation and severe burns to a majority of their bodies. Bostick's motivation was to rid herself of the burden of her three young children due to an infatuation with a teenage boy. From this, we cannot conclude that her consecutive sentences were inappropriate. Indeed, imposing concurrent murder sentences would mean that Bostick would only serve time for the murder of one of her children. We find that result to be inappropriate. *See Scruggs v. State*, 737 N.E.2d at 387 ("[i]n cases involving multiple killings, the imposition of consecutive sentences is appropriate").

Finally, in upholding the appropriateness of this sentence, we note with significance that the trial court judge who presided over this case from July 1998 through the 1999 trial, the Honorable Michael D. Peyton, also presided over the resentencing hearing in July 2003. Such a situation is clearly one in which we should be wary of substituting our judgment for that of the trial court, especially considering the trial court's intimate familiarity with the considerable details of this case.

The trial court properly balanced the mitigating and aggravating factors, determined that the ages of the victims and the

nature of the crime outweighed any mitigators, and appropriately imposed enhanced and consecutive sentences. Bostick's 210–year sentence is appropriate in light of the nature of the offense and her character.

Judgment affirmed.

KIRSCH, C.J., and BARNES, J., concur.