Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT:

**MICHAEL J. SPENCER**
**AMY P. PAYNE**
Monroe County Public Defenders
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES DAVID FINNEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1311-CR-495 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Marc R. Kellams, Judge
Cause No. 53C02-1111-MR-1081

**December 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

James David Finney appeals his convictions of Murder, a felony, Ind. Code § 35-42-1-1 (2007), and two counts of Class C felony Carrying a Handgun without a License, Ind. Code § 35-47-2-1 (2011), as well as the seventy-three-year sentence imposed thereon. We affirm.

## ISSUES

Finney raises seven issues for our review, which we consolidate and restate as:

I. Whether the trial court abused its discretion in denying Finney's motion to sever;

II. Whether the trial court abused its discretion in admitting evidence;

III. Whether the trial court abused its discretion in denying Finney's motion for a mistrial;

IV. Whether the trial court abused its discretion in instructing the jury;

V. Whether there is sufficient evidence to support Finney's murder conviction; and

VI. Whether Finney's sentence is inappropriate.

## FACTS AND PROCEDURAL HISTORY

At approximately midnight on November 3, 2011, as pizza delivery driver Adam Sarnecki returned to the Pizza X employee parking lot behind the store after his last delivery, he noticed David Finney attempting to break into a car. Finney fled to a nearby wooded area, and Sarnecki followed him. While the two men were briefly in the woods, Finney shot Sarnecki in the back. Sarnecki made his way back to Pizza X and collapsed. Sarnecki's co-worker called 911, and Bloomington Police Officer Jeff Rees responded to

the scene. Sarnecki was transported to the hospital, where he subsequently died from the gunshot wound.

Because there were few leads in the case, Bloomington Police Department Detective Joseph Henry "reached out" to his confidential informants the day after the shooting. Tr. p. 139. Confidential informant Crissinda Brault responded that Finney texted her at 2:00 that morning and told her that he had a gun that he needed to sell quickly. After meeting with Detective Henry, Brault asked Finney if he still had the gun. Finney responded that he did not. After Brault told Finney that she needed a gun to commit a crime, Finney took Brault with him to buy back the gun. However, after Finney paid for the gun with police funds provided by Brault, Finney refused to give the gun to Brault. Finney explained that he "[couldn't] let [her] walk with this gun cause there's a body on it . . . ." Tr. p. 196. When Brault dropped Finney off at a nearby mobile home, he still had possession of the gun.

Police officers obtained a search warrant for the mobile home. During the execution of the warrant, Finney was transported to the police station for a recorded interrogation. Bloomington Police Department Detective Robert Shrake advised Finney that he was in custody and read him his *Miranda* rights. Finney stated that he understood his rights and denied any involvement in the shooting at Pizza X. While Detective Shrake was questioning Finney, police officers searching the mobile home found the gun that killed Sarnecki behind a dryer vent and under a pipe at the bottom of a wall. Thereafter, Detective Chris Scott joined the interview at the police station and told Finney that officers had found the gun in the trailer. Detective Scott explained that he knew everything but did not know

3

why. Specifically, Detective Scott told Finney that if "[Sarnecki] rushed up on you or you [were] scared, that is different than you just coming and executing somebody." Appellant's App. p. 49. Finney asked the detective if "that [made] it murder 1, manslaughter or what?" *Id*. Finney further offered to "give the prosecutor a deal or something . . . ." *Id.* at 50.

Detective Scott responded, "I'll give you the prosecutor. . . . But I don't know what the hell you got to say. . . . [M]urder is if that kid got out of his car and you came up from behind and shot him for no reason, instead of you got spooked because you were breaking into cars . . . . [m]urder is the rest of your life . . . . So with me giving all this stuff to the prosecutor, he's going to have no choice but to hit you with murder, unless we find out what happened behind that building." *Id*. at 51, 52, 53. Finney subsequently admitted that he was trying to steal money from a parked car when Sarnecki ran up to him and followed him into the words. According to Finney, Sarnecki scared him, so he shot Sarnecki and ran from the scene.

The police charged Finney with murder and two counts of carrying a handgun without a license, one count for the day of the murder and a second count for the day Finney bought the gun back for Brault and took it to the trailer. Finney filed a motion to sever the second count of carrying a handgun without a license from the other charges, which the trial court denied. Finney also filed a motion to suppress the statements he made during the recorded interrogation, which the trial court denied.

At trial, defense counsel conceded in his opening statement that Finney had committed a crime against Sarnecki. However, he argued "that crime was not murder." Tr. p. 18. During trial, over Finney's hearsay objection, the trial court allowed Detective

4

Henry to testify about his discussions with Brault regarding Finney and the gun. The trial court admonished the jury that Detective Henry's testimony "only explained what he did next. It isn't something you can count on as a fact." Tr. p. 153. The trial court further explained that it was Brault's testimony that was being offered to show the facts.

Finney moved for a mistrial when Detective Henry testified that Brault told him Finney did not want her to have the gun because it had bodies on it. The trial court denied the motion. Brault subsequently testified that Finney told her he could not "let [her] walk with this gun cause there's a body on it . . . ." Tr. p. 196. Also during trial, the trial court admitted into evidence a redacted videotape and transcript of Finney's police interrogation.[1] Finney tendered a self-defense instruction, which the trial court refused to give. The trial court, however, granted Finney's request for instructions on the lesser included offenses of voluntary manslaughter, reckless homicide, and criminal recklessness. The jury convicted Finney of murder and two counts of carrying a handgun without a license.

Evidence presented at the sentencing hearing revealed that Finney has a criminal history that includes prior convictions for Class D felony intimidation, Class A misdemeanor Battery, and Class A misdemeanor Theft. At the time of the hearing, he also had pending charges for Battery, Criminal Recklessness, Carrying a Handgun without a License, and Dealing in Marijuana, all Class C felonies. In addition, during his pre-trial incarceration, Finney was disciplined for five separate incidents of jail misconduct and was the subject of at least two other misconduct reports. Prior to his incarceration, Finney

---

[1] All references to unrelated crimes were redacted from the videotape and transcript.

supported himself by selling marijuana. The trial court observed that Finney exhibited an escalating pattern of criminal behavior revealing his disdain for authority and propensity for violence. The trial court also noted a probation violation demonstrating Finney's inability to follow the trial court's rules and concluded that Finney was "dangerous" and if released, m[ight] well prey upon innocent citizens . . . ." Tr. p. 581. The trial court sentenced Finney to sixty-five years for murder and eight years for each count of Carrying a Handgun without a License. The trial court ordered the two eight-year sentences to run concurrently to each other and consecutive to the sixty-five-year sentence, for a total executed sentence of seventy-three years. Finney appeals his convictions and sentence.

## DISCUSSION AND DECISION

### I.    Denial of Motion to Sever

Finney first argues that the trial court erred in denying his Motion to Sever the second count of carrying a handgun without a license from the other charges. He specifically contends that he was entitled to severance of the charges as a matter of right, and in the alternative, that even if no right to sever existed, the trial court abused its discretion in denying his Motion to Sever.

Indiana Code section 35-34-1-11(a) provides defendants with the right to severance where "two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character." However, defendants have no such right to severance when the offenses are "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Ind. Code § 35-34-1-9(a).

6

Here, it is evident that the two counts of Carrying a Handgun without a License were joined for trial for reasons other than their similarity. Specifically, we agree with the State that the "facts supporting Count III were integral to the narrative that supported the Murder charge," and show a series of acts connected together. Appellee's Br. p. 22. Because the offenses were not joined based solely on their similarity, Finney was not entitled to severance of the charges as a matter of right.

We must therefore determine whether the trial court abused its discretion in denying his motion to sever. When determining whether to grant severance in a case where there is no automatic right, a trial court considers the number of offenses charged, the complexity of the evidence to be offered, and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently to each offense. Ind. Code § 35-34-1-11(a). Whether charges are severed is within the sound discretion of the trial court and will be upheld absent an abuse of that discretion. *Harvey v. State*, 719 N.E.2d 406, 409 (Ind. Ct. App. 1999). Finney must also show that in light of what actually occurred at trial, the denial of separate trials subjected him to prejudice. *Id.*

Our review of the evidence reveals there were only three offenses charged, the evidence offered was not complex, and the trier of fact would have been able to apply the law intelligently as to each offense. We find no evidence, nor does Finney point us to any, that the jury had difficulty distinguishing evidence as it related to each count or that the jury had difficulty applying the law to each offense. Finney has also failed to show that he was prejudiced by the denial of separate trials. The trial court did not abuse its discretion in denying Finney's motion to sever.

7

## II.   Admission of Evidence

Finney next argues that the trial court erred in admitting evidence.  Specifically, he contends the trial court improperly admitted Detective Henry's testimony about his discussions with Brault regarding Finney and the gun.  Finney also contends that the trial court erred in admitting his recorded interrogation into evidence because he did not voluntarily and intelligently waive his *Miranda* rights and his confession was not voluntary.[2]

We review court rulings on the admission of evidence for an abuse of discretion. *Corbally v. State*, 5 N.E.3d 463, 468 (Ind. Ct. App. 2014).  A trial court abuses its discretion only if its decision is against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law.  *Id.*

### A. *Hearsay Testimony*

Finney first argues that the trial court erred in admitting Detective Henry's testimony about his discussions with Brault regarding Finney and the gun.  Finney specifically contends this was inadmissible hearsay evidence.  The State responds that the detective's testimony was admissible as nonhearsay "course of investigation" evidence, and that even if the trial court erred in admitting it, the error was harmless.

We need not determine whether the trial court erred in admitting this evidence because the State is correct that any error was harmless.  When reviewing whether the erroneous admission of evidence was harmless, we must consider whether the evidence

---

[2] Although Finney originally challenged the admission of evidence through a motion to suppress, he now appeals following a completed trial.  The issue is therefore appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial.  *Widduck v. State*, 861 N.E.2d 1267, 1269 (Ind. Ct. App. 2007).

8

was likely to have substantially swayed the jury's verdict. *Id.* at 470. The improper admission of evidence is harmless error if we are satisfied that the conviction is supported by such substantial independent evidence of guilt that there is little likelihood the challenged evidence contributed to the conviction. *Id.* In deciding whether an error contributed to the verdict, we must determine whether the erroneously admitted evidence was unimportant in relation to everything else the jury considered on the issue in question. *Id.*

Here, Finney admitted that he shot Sarnecki in the back. The only disputed issue was whether Finney's crime was murder or a lesser offense. Detective Henry's testimony about his discussions with Brault regarding Finney and the gun was unimportant in relation to other evidence the jury considered on this issue. There is such overwhelming independent evidence of Finney's guilt that we can safely conclude that any error in the introduction of Detective Henry's testimony about his discussions with Gault was harmless. *See id.* at 471.

### B. *Recorded Statement*

Finney also argues that the trial court erred in admitting his recorded statement into evidence because he did not voluntarily and intelligently waive his *Miranda* rights and his confession was not voluntarily given. The State bears the burden of proving beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights and that his confession was voluntarily given. *Ringo v. State*, 736 N.E.2d 1209, 1211 (Ind. 2000). Where that standard has been met, the decision whether to admit a confession is within the trial court's discretion and will not be reversed absent an abuse of that discretion. *Id.* When

9

reviewing a challenge to the trial court's decision to admit a confession, we do not reweigh the evidence but instead examine the record for substantial probative value of voluntariness. *Id.*

A waiver of one's *Miranda* rights occurs when the defendant, after being advised of those rights and acknowledging that he understands them, proceeds to make a statement without taking advantage of those rights. *Id.* at 1211-12. Whether *Miranda* rights were knowingly and intelligently waived is determined by examining the totality of the circumstances. *Id.* at 1212. Relevant factors include the length, location, and continuity of the interrogation, and the maturity, education, physical condition, and mental health of the defendant. *Clark v. State*, 808 N.E.2d 1183, 1191 (Ind. 2004).

Here, Finney's sole argument is that the trial court failed to consider his intoxication and mental health. Specifically, he points to an unredacted transcript of his police interrogation where he told Detective Henry that he had been "strung out" on Klonopin for the previous three days and that his memory was "shot in a lot of places." Appellant's App. p. 70. He also points to his statements that he might have "snapped" and that he has been paranoid. *Id.* at 56.

A defendant's statement will be deemed incompetent only when he is so intoxicated that it renders him not conscious of what he is doing or produces a state of mania. *Brooks v. State*, 683 N.E.2d 574, 575 (Ind. 1997). Here, the State is correct that there is no evidence that Finney was intoxicated at the time of the interview. Further, Finney only mentioned the drug use and memory loss in relation to another offense that was redacted from his interrogation. In addition, his comments about snapping and being paranoid did not relate

10

to the time of the interrogation. Under the totality of the circumstances, Finney knowingly and voluntarily waived his *Miranda* rights, and the trial court did not err in admitting his police interrogation into evidence.

Finney also argues that the trial court erred in admitting his statement into evidence because his confession was involuntary. Specifically, he contends that the police coerced him into confessing with promises of leniency.

Voluntariness, like the validity of a waiver of rights, is determined in light of the totality of the circumstances surrounding the interrogation. *Clark*, 808 N.E.2d at 1191. A confession is inadmissible if obtained by promises of mitigation or immunity. *Id.* However, vague and indefinite statements by police that it would be in a defendant's best interest if he cooperated do not render a subsequent confession inadmissible. *Id.* In addition, statements by police expressing a desire that a suspect cooperate and explaining the possible crimes and penalties are not specific enough to constitute either promises or threats. *Id.*

Here, Finney cites no specific promises of mitigation or immunity, and we find none. Rather, our review of the recorded interrogation reveals that Detective Scott explained the various homicide offenses to Finney and suggested Finney would be better served by telling the truth. Although these statements were an attempt to induce Finney to comply with Detective Scott's requests, they did not constitute promises of benefits, threats, or inducements that rendered Clark's confession involuntary. *See id.* The trial court did not err in admitting Finney's recorded interrogation into evidence.

III.    Denial of Motion for a Mistrial

11

Finney next argues that the trial court erred in denying his motion for a mistrial. A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error. *Randolph v. State*, 755 N.E.2d 572, 575 (Ind. 2001). The decision to grant or deny a motion for mistrial lies within the discretion of the trial court. *Id.* The trial court's determination will be reversed only where an abuse of discretion can be established. *Id.* To prevail, the appellant must establish that he was placed in a position of grave peril to which he should not have been subjected. *Id.* The gravity of the peril is determined by the probable persuasive effect on the jury's decision. *Leach v. State*, 699 N.E.2d 641, 644 (Ind. 1998).

Finney's sole argument is that the "trial court erred in denying [his] motion for mistrial based on the improper testimony regarding Finney's prior bad acts because it violated both Indiana Rule of Evidence 404(b) and a previously granted motion in limine." Appellant's Br. p. 14. The testimony about which Finney complains is Detective Henry's testimony that the gun used to kill Sarnecki had "bodies" on it. Tr. p. 152. According to Finney, "[r]eference to the weapon involved in this case having 'bodies' on it clearly implies that Finney has committed other crimes and potentially other murders with this gun." *Id.* at 16.

First, as the State points out, when the trial court denied Finney's motion, the State said it would instruct Brault to "make it singular" and refer to one body. Tr. p. 174. In addition, the trial court admonished the jury that it was Brault's testimony that was being offered to show the facts. We presume that this admonishment was sufficient to avoid a mistrial. *See Kent v. State*, 675 N.E.2d 332, 335 (Ind. 1996) (explaining that a prompt

12

admonishment to the jury to disregard improper testimony is usually enough to avoid a mistrial).

Further, to the extent Detective Henry's use of the word "bodies" referred to Finney's statement to Brault and not to any specific prior acts, Evidence Rule 404(b)'s limitation on evidence of uncharged misconduct simply does not apply. *See Clark v. State,* 915 N.E.2d 126, 130 (Ind. 2009) (explaining that where the defendant's words and not his deeds are at issue, Rule 404(b) does not apply). Because Rule 404(b) does not apply, Detective Henry's testimony could not have violated it. The trial court did not err in denying Finney's motion for a mistrial.

## IV.    Jury Instruction

Finney also argues that the trial court erred in refusing to read to the jury his tendered self-defense instruction, which provides as follows:

> It is an issue whether James D. Finney acted in self-defense.
>
> A person may use reasonable force against another person to protect himself from what the defendant reasonably believes to be the imminent use of unlawful force.
>
> A person is justified in using deadly force, and does not have a duty to retreat, only if he reasonably believes that deadly force is necessary to prevent serious bodily injury to himself.

Appellant's App. p. 118.

The manner of instructing the jury lies largely within the discretion of the trial court, and we will reverse only for an abuse of that discretion. *Henson v. State*, 786 N.E.2d 274, 277 (Ind. 2003). In determining whether the trial court abused its discretion by declining to give a tendered instruction, we consider the following:   1) whether the tendered

13

instruction correctly states the law; 2) whether there was evidence presented at trial to support giving the instruction; and 3) whether the substance of the instruction was covered by other instructions that were given. *Id.* Here, the State claims that the instruction is an incorrect statement of the law and that the evidence does not support giving it. The State is correct on both counts.

A valid claim of self-defense is a legal justification for an otherwise criminal act. *Id.* A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. *Id.* (citing Indiana Code § 35-41-3-2). The phrase "reasonably believes" as used in the self-defense statute comprises both subjective and objective components. *Washington v. State*, 997 N.E.2d 342, 349 (Ind. 2013). Specifically, the defendant must have a subjective belief that force was necessary to protect himself, and this belief must be one that a reasonable person would have held under the circumstances. *Id.* A claim of self-defense also requires a defendant to have acted without fault, to have been in a place where he or she had a right to be, and to have been in reasonable fear or apprehension of bodily harm. *White v. State*, 699 N.E.2d 630, 635 (Ind. 1998).

Here, Finney's tendered instruction failed to instruct the jury that he was required to have acted without fault, to have been in a place where he had a right to be, and to have been in reasonable fear or apprehension of bodily harm. Finney's instruction was an incomplete and incorrect statement of the law, and the trial court did not err in failing to give it.

14

In addition, the State is correct that there is no evidence to support giving this instruction. Although Finney stated in his police interview that he shot Sarnecki because Sarnecki scared him, Finney has never alleged that Sarnecki was armed or threatened him with the unlawful use of deadly force. We agree with the State that "Finney's subjective fear as alleged in his interview is not coupled with any objective facts that would prompt a reasonable person to fear death or great bodily harm." Appellee's Br. p. 20. We further note that Finney shot Sarnecki in the back, which suggests that Sarnecki was either retreating or about to retreat. In *Howard v. State,* 755 N.E.2d 242, 248 (Ind. Ct. App. 2001), this Court explained that a self-defense instruction was properly refused where the defendant grabbed the victim after the victim had started to turn and walk away. Because there is no evidence to support giving the instruction, the trial court did not err in failing to give it.

## V.     Sufficiency of the Evidence

Finney next argues that there is insufficient evidence to support his murder conviction. Specifically, his sole contention is that the State failed to establish that he did not act in sudden heat, a factor that mitigates murder to voluntary manslaughter. Voluntary manslaughter is a lesser included offense of murder, distinguishable by the factor of the defendant having killed while acting under sudden heat. *See* Ind. Code § 35-42-1-3. To establish sudden heat, the defendant must show sufficient provocation to engender passion. *Earl v. State*, 715 N.E.2d 1265, 1267 (Ind. 1999). Sufficient provocation is demonstrated by such emotions as anger, rage, sudden resentment, or terror sufficient to obscure the

15

reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection. *Id.*

Because there is no implied element of the absence of sudden heat in the crime of murder, the State is under no obligation to negate the presence of sudden heat to obtain a conviction. *Id.* However, once a defendant places sudden heat into issue, the State bears the burden of negating the presence of sudden heat beyond a reasonable doubt. *Id.* The State may meet this burden by rebutting the defendant's evidence or affirmatively showing in its case-in-chief that the defendant was not acting in sudden heat when the killing occurred. *Id*.

Here, Finney argues that his "fear of being caught trying to open car doors was sufficient to provoke emotions that obscured Finney's ability to reason, prevented deliberation and premeditation, and rendered him incapable of cool reflection." Appellant's Br. pp. 27-28. However, even assuming that Finney's fear of being caught trying to open car doors could establish the presence of sudden heat, the jury was under no obligation to credit it. The existence of sudden heat is a classic question of fact to be determined by the jury. *Jackson v. State*, 709 N.E.2d 326, 329 (Ind. 1999). Here, the jury determined sudden heat did not exist. Finney's argument is essentially an invitation to reweigh the evidence, which we will not do. The State produced sufficient evidence to establish that Finney was not acting in sudden heat when he killed Sarnecki.

## VI. Sentence

Lastly, Finney argues that his seventy-three-year sentence is inappropriate. Article VII, section 4 of the Indiana Constitution authorizes independent appellate review of

16

sentences. *Rice v. State*, 6 N.E.3d 940, 946 (Ind. 2014). This review is implemented through Indiana Appellate Rule 7(B), which states that we may revise a sentence, even if authorized by statute, if after due consideration of the trial court's decision, the sentence is inappropriate in light of the nature of the offense and the character of the offender. In determining whether a sentence is inappropriate, this Court looks at the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Finney bears the burden on appeal of persuading us that his sentence is inappropriate. *See Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

As to the nature of the offense, Sarnecki followed Finney into a wooded area to confront him after seeing him attempt to commit a crime. While the two men were briefly in the woods, Finney shot an unarmed Sarnecki in the back and killed him.

As to the character of the offender, we note that the significance of a criminal history in assessing a defendant's character is based on the gravity, nature and number of prior offenses in relation to the current offense. *Moss v. State*, 13 N.E.3d 440, 447 (Ind. Ct. App. 2014), *trans. denied*. Even a minor criminal history is a poor reflection of a defendant's character. *Id.* at 448. Here, Finney has much more than a minor criminal history. He has prior convictions for Class D felony intimidation, Class A misdemeanor Battery, and Class A misdemeanor Theft. At the time of the sentencing hearing, he also had pending charges for Battery, Criminal Recklessness, Carrying a Handgun without a License, and Dealing in Marijuana, all Class C felonies. In addition, during his pre-trial incarceration, Finney was disciplined for five separate instances of jail misconduct and was the subject of at least two

17

other misconduct reports. Prior to his incarceration, Finney supported himself by selling marijuana. The trial court correctly pointed out that Finney demonstrated an escalating pattern of criminal behavior that revealed his disdain for authority and propensity for violence. The trial court also correctly noted a probation violation demonstrating Finney's inability to follow the trial court's rules and concluded that Finney might well prey upon innocent citizens if released. Clearly, Finney has not reformed his criminal behavior despite his numerous contacts with the criminal justice system. Considering the nature of the offense and Finney's character, Finney has not met his burden of proving that his sentence is inappropriate. *See Prowell v. State,* 787 N.E.2d 997, 1004 (Ind. Ct. App. 2003), *trans. denied,* (sentence for murder determined not to be inappropriate).

Affirmed.

BAKER, J., and BRADFORD, J., concur.