Euranus JOHNSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0412–CR–1063.

Court of Appeals of Indiana.

Nov. 17, 2005.

Transfer Denied Jan. 26, 2006.

Michael E. Caudill, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Euranus Johnson appeals his conviction for criminal deviate conduct and his sentence for that and several other convictions related to the rape of a woman. We find that there is sufficient evidence to support Johnson's conviction for criminal deviate conduct, that the trial court did not abuse its discretion in sentencing Johnson to the maximum term for all of his convictions and in ordering all of his sentences to run consecutively, and that Johnson's sentence is not inappropriate. Therefore, we affirm.

### Facts and Procedural History

On January 7, 2003, at approximately 9:30 p.m., A.M. parked her truck near her apartment in Indianapolis. As A.M. exited her vehicle, Johnson, Rickie Johnson ("Rickie"), and Richard White ("White") approached her. Johnson stuck a handgun into her side and ordered her to get back into her truck. A.M. told the men that they could "take whatever they wanted," but they insisted that she get into the truck. Tr. p. 58–59. Johnson entered the driver's seat and Rickie entered the passenger's seat, leaving A.M. sitting between the two men. White rode in the bed of the truck.

Rickie asked A.M. if she had "anything in [her] coat or on [her]" and told her to give him her jacket and jewelry. *Id.* at 63–64. Rickie then asked if A.M. had any money and went through her purse, taking forty dollars and A.M.'s ATM card. Rickie told Johnson to drive the truck to a bank. As they drove, Johnson threatened to "hurt" A.M. if the men did not get any money, threatened to "bury" her, and called her a " 'b* * * *' or something like that." *Id.* at 64–65. Once they arrived at a bank with an ATM, Rickie gave A.M.'s

ATM card to White, asked A.M. for her PIN number, and told the number to White. White went to the ATM as Johnson, Rickie, and A.M. rode around the block. When White returned, he said that he was unable to obtain any money. Rickie angrily accused A.M. of lying about the PIN number, and Johnson drove the group a block away from the bank. Rickie and White then exited the truck and walked back toward the bank, leaving A.M. in the vehicle alone with Johnson.

With the other men gone, Johnson began touching A.M.'s leg. A.M. said "no," but Johnson responded, "I'm doing this." *Id.* at 69. Johnson then stuck his hands down A.M.'s pants and penetrated her vagina with his finger. Johnson told A.M. to remove her tampon, and A.M. lowered her pants and did so. Johnson then removed his own pants and penetrated A.M.'s vagina with his penis while holding the gun against her shoulder. Johnson continued intercourse until he ejaculated, then told A.M. to put her pants back on.

Rickie and White returned to the car, and Rickie said that they were still unable to obtain any money. Johnson moved to the bed of the truck, while White entered the driver's seat and Rickie entered the passenger's seat, again leaving A.M. sitting in the middle. White drove to a garage, and Johnson pulled A.M. from the truck. All four entered the garage by crawling under the partially-open garage door.

Once they were all in the garage, Rickie told A.M. "that since they didn't get any money from [her] that [she] was going to pay for it." *Id.* at 77. Rickie then unbuttoned his pants and "showed that he wanted oral sex." *Id.* A.M. was "scared" and "intimidated" because she was aware that the men had a gun, so she complied with Rickie's request. *Id.* at 77, 79. As A.M. was performing oral sex on Rickie, he told her to get down onto her knees, which she did. White then approached, and Rickie told A.M. to get up, turn around, and pull her pants down. A.M. continued oral sex with Rickie, and White entered her vaginally from behind. After a short period of time, both Rickie and White backed away from A.M.

Johnson then approached A.M. with his pants down and told her that he wanted oral sex. A.M. complied, then Johnson told A.M. to stand up and sit on the edge of the car that was in the garage. From this position, Johnson entered A.M. vaginally for a brief period, and then requested further oral sex, which A.M. did. Next, Johnson turned A.M. around and entered her vaginally from behind. While he was behind A.M., Johnson put his penis into her anus. When A.M. moved forward and told Johnson that she was in pain, Johnson "moved down" and entered her vaginally. *Id.* at 81, 123, 142–43. Johnson again told A.M. to turn around to face him and had her lay back on the car. Johnson entered her vaginally from the front and continued intercourse until he ejaculated, and then he moved back, pulled up his pants, and walked away.

As they exited the garage, A.M. saw that Johnson was holding a gun. Johnson told A.M. to get into the back of the truck, and he lay down next to her. While the two lay next to each other, Johnson put the gun between A.M.'s legs and asked her if she "want[ed] to get shot in [her] pussy." *Id.* at 81. The truck eventually came to a stop and Rickie and White told Johnson to get A.M. out of the truck. Johnson refused and told the other men that he wanted to take A.M. with them. After driving for a bit longer, Rickie and White again stopped and told Johnson to get A.M. out of the truck. This time Johnson agreed, and A.M. was allowed to crawl out of the truck and walk away. As A.M. walked away, she could see the shadow of the

truck, created by a streetlight, on the side of a building. In the shadow, A.M. could see that Johnson was standing in the back of the truck pointing the gun at her. As the truck started to move, Johnson stumbled and then sat down. The truck backed up past A.M. and drove away, and A.M. went to a nearby house, where someone called 911.

A.M. was taken to Wishard Hospital for treatment and evidence collection. An examination showed multiple vaginal injuries. A.M. told the doctor that she had been anally penetrated and the doctor noted "multiple abrasions between the vagina, lower vaginal orifice and the upper rectum, or upper anal area." *Id.* at 191.

The State charged Johnson with Rape as a Class A felony;[1] two counts of Criminal Deviate Conduct as a Class A felony,[2] the first for inserting his finger into A.M.'s vagina and the second for inserting his penis into A.M.'s anus; Carjacking, a Class B felony;[3] Robbery as a Class B felony;[4] and Criminal Confinement as a Class B felony.[5] Johnson turned himself in to police. White entered a plea agreement with the State, and Johnson and Rickie were tried together in a trial that was bifurcated into a guilt phase and an aggravating circumstances phase. During the guilt phase, Johnson stipulated that his fingerprint was found on a book owned by A.M. that was recovered from the garage. Johnson also stipulated to a DNA report showing that his DNA was found in A.M.'s vaginal swabs, external genital swabs, a dried secretion swab, a dried vaginal wash stain, and in three stains on A.M.'s under-

wear. The jury found both Johnson and Rickie guilty as charged.

During the aggravating circumstances phase, the jury found beyond a reasonable doubt that the State had proved the following aggravating circumstances: (1) Johnson's criminal history, including arrests and pending investigations; (2) the nature and circumstances of the crime, including Johnson's threat to kill A.M.; the risk of transmission of disease to A.M., and the fact that Johnson acted in concert with others; and (3) the impact of the crime on the victim.

During the sentencing hearing, the trial court noted the three aggravating circumstances that were found by the jury and specifically found "[Johnson's] prior criminal history and convictions beginning with [his] juvenile history" to be an aggravating circumstance. *Id.* at 488. In addition, the trial court found the fact that Johnson turned himself in to police to be a mitigating factor but concluded that "the aggravating circumstances far outweigh the mitigating circumstances." *Id.* at 489.

The trial court sentenced Johnson as follows: (1) the maximum term of fifty years on the rape charge; (2) the maximum term of fifty years on the first criminal deviate conduct charge; (3) the maximum term of twenty years on the second criminal deviate conduct charge; (4) the maximum term of twenty years on the carjacking charge; (5) the maximum term of eight years on the robbery charge; and (6) the maximum term of three years on the criminal confinement charge.[6] Finally,

---

1. Ind.Code § 35–42–4–1(a) & (b).

2. Ind.Code § 35–42–4–2(a) & (b).

3. Ind.Code § 35–42–5–2.

4. Ind.Code § 35–42–5–1.

5. Ind.Code § 35–42–3–3(a) & (b).

6. During sentencing, the second of Johnson's two criminal deviate conduct charges was dropped from a Class A felony to a Class B felony, which carries a maximum sentence of twenty years, Ind.Code § 35–50–2–5 (Supp. 2005); Johnson's robbery charge was dropped from a Class B felony to a Class C felony, which carries a maximum sentence of

the court ordered all six sentences to run consecutively, for a total executed sentence of 151 years. Johnson now appeals.

### Discussion and Decision

Johnson challenges the sufficiency of the evidence supporting his conviction on the count of criminal deviate conduct arising from his penetration of A.M.'s anus. Johnson also argues that the trial court abused its discretion in sentencing him and asks this Court to revise his sentence.

### I. Sufficiency of the Evidence

■ Johnson first contends that there is not sufficient evidence to support his conviction for criminal deviate conduct based on his penetration of A.M.'s anus. Specifically, Johnson argues that there is not substantial evidence that he penetrated A.M.'s anus, and that even if he did, he did not do so knowingly or intentionally, as required by statute. When reviewing a challenge to the sufficiency of evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jones v. State,* 783 N.E.2d 1132, 1139 (Ind.2003). We look only to the probative evidence supporting the judgment and the reasonable inferences from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* We will uphold the conviction if there is substantial evidence of probative value to support it. *Id.*

■ There is substantial evidence from which the jury could have found that Johnson penetrated A.M.'s anus with his penis. First, A.M. testified that Johnson "started to enter [her] anally, and [she] moved forward and said no, that it hurts." Tr. p. 81. When asked, on a scale of one to ten, how certain she was that Johnson had put his penis in her anus, A.M. replied, "Ten." *Id.*

at 143. The uncorroborated testimony of the victim is sufficient to sustain a criminal conviction. *Morrison v. State,* 824 N.E.2d 734, 743 n. 6 (Ind.Ct.App.2005), *trans. denied.* In addition, the doctor who examined A.M. following the incident also testified that: (1) A.M. reported that she had been anally penetrated; (2) she found "multiple abrasions between [A.M.'s] vagina, lower vaginal orifice and the upper rectum, or upper anal area," *id.* at 191; and (3) when A.M. returned to the hospital for a follow-up, she had a bladder infection which could have been caused by anal sex followed by vaginal sex. Johnson's argument that he did not penetrate A.M.'s anus amounts to an invitation to reweigh the evidence, which we will not do. *Jones,* 783 N.E.2d at 1139.

■ Johnson also argues that even if he did penetrate A.M.'s anus, he did not do so with the mental state required by statute; that is, any penetration of A.M.'s anus was not done "knowingly or intentionally." *See* Ind.Code § 35–42–4–2(a). "The element of intent may be proven by circumstantial evidence alone, and it is well-established that knowledge and intent may be inferred from the facts and circumstances of each case." *Lykins v. State,* 726 N.E.2d 1265, 1270 (Ind.Ct.App.2000). The State is not required to prove intent by direct and positive evidence. *Id.* at 1271.

There is substantial evidence that Johnson knowingly or intentionally penetrated A.M.'s anus with his penis. In particular, A.M. testified that Johnson entered her anally, and that he "moved down" and entered her vaginally only after she moved forward and told him that it hurt. Tr. p. 81. Furthermore, A.M. alleges that when

---

eight years, Ind.Code § 35–50–2–6 (Supp. 2005); and Johnson's criminal confinement charge was dropped from a Class B felony to

a Class D felony, which carries a maximum sentence of three years, Ind.Code § 35–50–2–7 (Supp.2005).

Johnson entered her anus, she was facing the car and Johnson was behind her, a position that would allow for anal penetration. Contrary to Johnson's assertion, it was reasonable for the jury to infer that he knowingly or intentionally penetrated A.M.'s anus with his penis. Finally, to the extent that Johnson is suggesting that he entered the "wrong" orifice accidentally, that is again an invitation for us to reweigh the evidence, which we will not do. *Jones*, 783 N.E.2d at 1139.

## II. Sentencing

Johnson also raises several issues regarding his sentence, which we consolidate and restate as follows: (1) whether the trial court erred in weighing an aggravator and failing to find a mitigator; (2) whether the trial court provided a sufficient statement of its reasons for imposing enhanced and consecutive sentences; and (3) whether Johnson's sentence is inappropriate in light of the nature of his offenses and his character.

▇ Sentencing lies within the discretion of the trial court. *Haddock v. State*, 800 N.E.2d 242, 245 (Ind.Ct.App.2003). The trial court's assessment of the proper weight of mitigating and aggravating circumstances and the appropriateness of the sentence as a whole is entitled to great deference on appeal and will be set aside only upon a showing of a manifest abuse of discretion. *Id.*

### A. Aggravators and Mitigators

▇ First, Johnson contends that the trial court should have given his criminal history less aggravating weight because of the "lack of relatedness" between his past crimes and the instant offenses. Appellant's Br. p. 17. Johnson cites *Wooley v. State*, 716 N.E.2d 919, 929 n. 4 (Ind.1999), for the proposition that the significance of the criminal history aggravator "varies based on the gravity, nature and number

of prior offenses as they relate to the current offense." In *Wooley*, our Supreme Court held that a single conviction for driving while intoxicated, a nonviolent misdemeanor, was not a significant aggravator in the context of a sentence for murder. *Id.* at 929; *see also Westmoreland v. State*, 787 N.E.2d 1005, 1010 (Ind.Ct.App.2003) (finding that a criminal history comprised of misdemeanors unrelated to the charged offense is not a significant aggravator). Johnson's criminal history, on the other hand, reveals a pattern of contempt for the law, including three felonies among nine adult convictions and seven true findings as a juvenile. We cannot say that the trial court abused its discretion by giving Johnson's criminal history significant aggravating weight.

▇ Johnson also argues that the trial court should have considered his age as a mitigating factor. However, Johnson concedes in his brief that this mitigator was not raised to the sentencing court. "A defendant who fails to raise proposed mitigators at the trial court level is precluded from advancing them for the first time on appeal." *Pennington v. State*, 821 N.E.2d 899, 905 (Ind.Ct.App.2005). Therefore, Johnson has waived this claim.

▇ Waiver notwithstanding, Johnson's argument still fails. The finding of mitigating factors is not mandatory; it is within the discretion of the trial court. *Ellis v. State*, 736 N.E.2d 731, 736 (Ind. 2000). Johnson was twenty-one when he committed the offenses. As the Indiana Supreme Court has stated, "There are both relatively old offenders who seem clueless and relatively young ones who appear hardened and purposeful." *Id.*; see *also Sensback v. State*, 720 N.E.2d 1160, 1164 (Ind.1999) ("At eighteen, [defendant] is beyond the age at which the law commands special treatment by virtue of

youth."). Given Johnson's lengthy criminal history, we cannot say that the trial court abused its discretion by failing to give mitigating weight to his age.

### B. Sufficiency of Sentencing Statement

█ Next, Johnson contends that the trial court's sentencing statement does not support the imposition of enhanced and consecutive sentences. As a preliminary matter, we note that most of the arguments in Johnson's brief are based on the premise that the trial court "found and employed only a single statutory aggravating circumstance—[Johnson's] criminal history." Appellant's Br. p. 11. This is not a fair interpretation of the court's sentencing statement.

First, the jury found three aggravating factors beyond a reasonable doubt: Johnson's criminal history, the nature and circumstances of the crime, and the impact of the crime on A.M. Then, in sentencing Johnson, the court stated:

> The Court ... [w]ould also find as to [Johnson] that the jury did find aggravating circumstances by reason of the— including arrests, criminal history and pending investigations.[7] Also that the defendant's threats to kill [A.M.], the risk of disease transmission due to types of sexual activity, the action in concert with the other defendants and the impact of the crime on the complaining witness. The Court would be finding aggravating circumstances by reason of

[Johnson's] prior criminal history and convictions beginning with [his] juvenile history which also was found by the jury in this matter.

Tr. p. 488–89. To the extent that Johnson argues that the trial court relied on only one aggravator, we disagree and hold that the court relied on both the jury's findings and its own finding as to Johnson's criminal history.

█ Johnson asserts that the trial court abused its discretion in imposing enhanced and consecutive sentences because it neither "properly analyze[d] the aggravators and mitigators" nor stated its reasons for imposing consecutive sentences. Appellant's Br. p. 15. "In order for a trial court to impose enhanced or consecutive sentences, it must (1) identify the significant aggravating factors and mitigating factors; (2) relate the specific facts and reasons that the court found to those aggravators and mitigators; and (3) demonstrate that the court has balanced the aggravators with the mitigators." *Bostick v. State*, 804 N.E.2d 218, 224–25 (Ind.Ct.App. 2004). The same aggravating factors may be used both to enhance a presumptive sentence and to justify consecutive sentences. *Ratliff v. State*, 741 N.E.2d 424, 432 (Ind.Ct.App.2000), *trans. denied.*

Johnson concedes that the trial court identified the significant aggravating and mitigating circumstances, but he argues that the court "failed to actually indicate

---

7. The jury's finding that Johnson's arrests and pending investigations are included in his criminal history was based on the trial court's preliminary and final instructions and the verdict forms, which presented to the jury as a possible aggravating circumstance, "The Defendant's criminal history, including arrests and pending investigations." Appellant's App. p. 167, 295, 296, 300, 301; Tr. p. 460. We remind trial courts and prosecuting attorneys that, "[a] record of arrest, without

more, does not establish the historical fact that a defendant committed a criminal offense and may not be properly considered as evidence of criminal history." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind.2005). However, a record of arrest, particularly a lengthy one, may be given aggravating weight, as "[s]uch information may be relevant to the trial court's assessment of the defendant's character in terms of the risk that he will commit another crime." *Id.*

how these were analyzed or balanced." Appellant's Br. p. 14–15. We disagree. The court identified three aggravators: (1) Johnson's criminal history; (2) the nature and circumstances of the crime; and (3) the impact of the crime on A.M. As to Johnson's criminal history, the court referenced his juvenile record and then listed the charges and dates of his eight adult convictions, including at least three felonies, from 1999 through 2003. The court also stated why the nature and circumstances of the crime was an aggravating factor, acknowledging the jury's findings as to Johnson's threats to kill A.M., the risk of transmission of disease to A.M., and the fact that Johnson acted in concert with others. Finally, the court noted that Johnson's turning himself in to police was a mitigating factor but found that "the aggravating circumstances far outweigh the mitigating circumstances." Tr. p. 489. The trial court's articulation of the aggravating and mitigating circumstances was sufficient, and the court did not abuse its discretion in finding that the three aggravating circumstances outweighed the one mitigating circumstance or in ordering consecutive sentences.[8]

## C. Appropriateness of Sentence

■ Last, Johnson urges us to "resentence him to concurrent terms under [our] own authority." Appellant's Br. p. 11, 16, 18. He cites three separate times to Indiana Rule of Appellate Procedure 7(B), which states: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." However, it is apparent from Johnson's brief that his challenge is really to the sufficiency of the trial court's statement supporting the imposition of enhanced and consecutive sentences rather than to the overall appropriateness of his sentence, which is the concern of Appellate Rule 7(B). We have already held that the trial court's sentencing statement supports the imposition of enhanced and consecutive sentences, and because Johnson has failed to make a cognizable argument regarding the nature of his offenses and his character, he has waived any challenge to the appropriateness of his sentence. Ind. Appellate Rule 46(A)(8)(a).

■ Waiver notwithstanding, we address this issue. In doing so, we note that "[a]lthough appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Purvis v. State,* 829 N.E.2d 572, 588 (Ind. Ct.App.2005) (internal citations omitted), *trans. denied.*

There is nothing about the nature of Johnson's offenses or Johnson's character that leads us to find that his sentence in this cause is inappropriate. A.M. was alone on a dark winter night, and Johnson

---

**8.** Johnson also contends that the trial court failed to consider all of the factors under Indiana Code § 35–38–1–7.1(a) in imposing his sentence. However, as the State points out, this Court has repeatedly held that when an enhanced sentence is imposed, a proper sentencing statement only requires the court to identify the significant aggravating factors and mitigating factors, relate the specific facts and reasons that the court found to those aggravators and mitigators, and demonstrate that the court has balanced the aggravators with the mitigators. *Bostick,* 804 N.E.2d at 224–25. There is no requirement that the trial court provide a statement tracking the language of Indiana Code § 35–38–1–7.1(a), and the failure to provide such a statement does not mean the factors were not considered. In this case, the trial court's sentencing statement was sufficient.

and two other men carjacked her at gunpoint. Johnson called A.M. "b* * * *" and told her that he would "hurt" her and "bury" her if the men were not able to get any money out of her bank account. Tr. p. 64–65. When left alone with her in the vehicle, Johnson raped her while holding a gun to her shoulder. When she said, "no," he said, "I'm doing this." *Id.* at 69. The three men then took A.M. to a garage and continued to have their way with her. Johnson forced A.M. to perform oral sex on him, then ordered her into different positions as he continued to rape her vaginally. At one point, he penetrated A.M. anally, stopping only when she moved forward and told him that it hurt. After the group left the garage, Johnson entered the back of the pickup with A.M., shoved a gun between A.M.'s legs, and asked her if she "want[ed] to get shot in [her] pussy." *Id.* at 81. When the other men stopped the truck and told Johnson to let A.M. go, he refused, telling the men that he wanted to take A.M. with them. When A.M. was finally allowed to leave, Johnson stood behind her, pointing a gun at her.

Presented with these facts, the jury found the nature and circumstances of Johnson's crime to be an aggravating factor. In particular, the jury found that Johnson had threatened to kill A.M., that Johnson raped A.M. in disregard of the risk of transmission of disease, and that Johnson had acted in concert with two other men. In addition, the jury found that the negative impact that Johnson's crime would have on A.M. is an aggravating factor. Also, we note that Johnson was only charged with one count of rape even though A.M. testified that Johnson raped her once in the truck and once again in the garage.

Furthermore, Johnson's history of criminal activity is indicative of his character. When evaluating the character of an offender, a trial court may consider the offender's arrest record in addition to actual convictions. *See Cox v. State,* 780 N.E.2d 1150, 1157 (Ind.Ct.App.2002). "[A] record of arrests, particularly a lengthy one, may reveal that a defendant has not been deterred even after having been subject to the police authority of the State." *Cotto v. State,* 829 N.E.2d 520, 526 (Ind. 2005).

As a juvenile, Johnson was arrested for sixteen offenses, which led to thirteen formal charges, resulting in the following seven true findings: battery, fleeing, disorderly conduct, auto theft, operating a vehicle without a license, and two counts of criminal conversion.[9] As an adult, before the events giving rise to this cause, Johnson was arrested for eighteen offenses, which led to sixteen formal charges, resulting in the following nine convictions: possession of marijuana; two counts of possession of cocaine, one of which was a felony; two counts of disorderly conduct; three counts of resisting law enforcement, one of which was a felony; and auto theft, a felony. Finally, while awaiting trial in this cause, Johnson was arrested for and charged with a felony count of criminal recklessness and three counts of misdemeanor battery.

After due consideration of the nature of Johnson's crimes and his character, we cannot say that his sentence is inappropriate.

### Conclusion

There is sufficient evidence to support Johnson's conviction for criminal deviate conduct. Furthermore, the trial court's sentencing statement is sufficient to sup-

---

9. Johnson was also charged with possession of marijuana as a juvenile, but that charge was waived to adult court, where Johnson was convicted.

port Johnson's enhanced and consecutive sentences. Finally, Johnson's sentence is not inappropriate in light of the nature of his offenses and his character. Therefore, we affirm.

Judgment affirmed.

FRIEDLANDER, J., concurs.

SULLIVAN, J., concurs in result with opinion.

SULLIVAN, Judge, concurring in result.

Unlike the decisions in *Cotto v. State*, 829 N.E.2d 520 (Ind.2005) and *Cox v. State*, 780 N.E.2d 1150 (Ind.Ct.App.2002), the matter of prior arrests and investigations of Johnson were not being considered in the context of his "character in terms of the risk that he will commit another crime." *Cotto*, 829 N.E.2d at 526. In *Cox*, the court specifically observed that the prior arrests of Cox were not considered by the trial court "as part of his criminal record." 780 N.E.2d at 1157. Those cases are therefore to be distinguished from the case before us.

Here, to the contrary, the jury clearly and explicitly found:

> "We the jury find that the State of Indiana has proven beyond a reasonable doubt the charged aggravating circumstances of the *Defendant's criminal history, including arrests and pending investigations.*" Tr. at 460–61 (emphasis supplied).

It was equally clear that it was upon this jury determination that the trial court focused in sentencing Johnson, not that he was likely to commit another crime.

Accordingly, I conclude that the trial court erroneously considered prior arrests and pending investigations as part of Johnson's criminal record and on that basis, at least in part, imposed the enhanced sentence. My conclusion is premised upon the oft-stated principle that mere "arrest[s] [and/or investigations] . . . may not be properly considered as evidence of criminal history" so as to justify an enhanced sentence. *Cotto, supra,* 829 N.E.2d at 526; *Scheckel v. State,* 620 N.E.2d 681 (Ind.1993); *see also Asher v. State,* 790 N.E.2d 567 (Ind.Ct.App.2003).

Nevertheless, I do not find the error to warrant reversal. The other aggravators found by the jury and used by the court in sentencing are adequate. I therefore concur in the affirmance of Johnson's conviction and sentence.