## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 13 2016, 5:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Fronse W. Smith, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 13, 2016 <br><br> Court of Appeals Case No. <br> 71A03-1511-CR-2098 <br><br> Appeal from the St. Joseph <br> Superior Court <br><br> The Honorable John M. <br> Marnocha, Judge <br><br> Trial Court Cause No. <br> 71D02-1506-F6-361 |

**Mathias, Judge.**

[1]     Fronse W. Smith, Jr. ("Smith") was convicted in St. Joseph Superior Court of Level 6 felony intimidation. Smith appeals his conviction and argues:

I.    Whether the evidence is sufficient to support his intimidation conviction,

II.   Whether there was an improper variance between the charging information and the proof at trial, and,

III.  Whether the trial court abused its discretion when it allowed the State to amend the charging information one day before trial.

We affirm.

## Facts and Procedural History

In May 2014, Smith and his wife, Linda, were separated and sharing custody of their son, C.S. On May 29, 2015, C.S. was at Smith's house, and when Linda called to check on C.S., Smith assured her that C.S. was fine. Later that night, Smith called Linda, told her he was in the McDonald's drive-through, and asked if she wanted anything to eat. Linda believed that Smith wanted to bring her food so that he could spend time with her that night.

Linda declined Smith's offer, and Smith quickly became agitated and angry. He called Linda foul names and told her that she was a bad wife. He then threatened her, stating that he "was going to split [her] chest open with an ax." Tr. pp. 38, 54. Linda knew that Smith had an ax and feared for her safety.

Linda disconnected the phone call and called 911. She drove to the Mishawaka police station, and while she was there, Smith began to text her. Smith claimed that C.S. was in bed at Linda's house. He also stated that he was going to dispose of and destroy Linda's property. Linda told the officers that she believed that Smith was inside her house.

[6] South Bend Police Officers Alex Pishkur and Harvey Mills were dispatched to Linda's home. When they arrived, Smith was walking from his vehicle into Linda's house. Smith had parked his vehicle with an attached trailer in the middle of the street blocking the normal flow of traffic. Smith was uncooperative and hostile with the officers.

[7] Linda returned to her home shortly thereafter. She and Smith spoke briefly while Officer Mills stood nearby. At one point, Smith moved closer to Linda and stated, "Now you've really done it." Tr. p. 48. The officer then arrested Smith and placed him in handcuffs.

[8] The officers decided to tow Smith's vehicle but allowed Linda to look inside for the keys in order to move it from the roadway. Linda observed an ax underneath several items piled on the front passenger seat. Officer Mills also observed the ax.

[9] On June 3, 2015, Smith was charged with Level 6 felony intimidation.  The State alleged:

> FRONSE WAYNE SMITH, JR. did communicate a threat to
> commit a forcible felony, to Linda Smith, with the intent that
> Linda Smith be placed in fear of retaliation for a prior lawful act.

Appellant's App. p. 110.

[10] On September 15, 2015, the State moved to amend the charging information. The amended information described the "prior lawful act" as an argument "because Linda Smith did not want McDonald's." *Id*. at 97. On the day before

Smith's jury trial commenced, the trial court granted the State's motion to amend the charging information.

On September 24, 2015, a jury trial was held, and Smith was found guilty as charged. For his Level 6 felony intimidation conviction, Smith was ordered to serve a one-year suspended sentence. He was placed on probation for one year, and the trial court issued a no contact order. Smith now appeals his conviction.

## Insufficient Evidence

Smith argues that the State failed to present sufficient evidence to prove that he committed Level 6 felony intimidation.

> When we review a claim challenging the sufficiency of the evidence we neither reweigh the evidence nor assess the credibility of the witnesses. Instead, we consider only the evidence and reasonable inferences drawn therefrom that support the verdict. And we will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt.

*Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016) (citing *Treadway v. State*, 924 N.E.2d 621, 639 (Ind. 2010).

In order to convict Smith of intimidation as charged, the State was required to prove that he communicated a threat to Linda, with the intent that Linda be placed in fear of retaliation for a prior lawful act. *See* Ind. Code § 35-45-2-1(a)(2) (2014). Smith argues that the State failed to prove "a prior lawful act" or any

"connection between the threat made by the defendant and the prior lawful act claimed by the State." Appellant's Br. at 10.

[14] Our court has held that "mere proof that the victim is engaged in an act which is not illegal at the time the threat is made is not sufficient." *Casey v. State*, 676 N.E.2d 1068, 1072 (Ind. Ct. App. 1997). The State "must establish that the legal act occurred prior to the threat and that the defendant intended to place the victim in fear of retaliation for that act." *Id.*; *see also Ransley*, 850 N.E.2d 443, 447 (Ind. Ct. App. 2006), *trans. denied* (stating "a person may be angry enough to commit intimidation. However, anger, without proof of intent to retaliate, is not enough to satisfy the requirements of the statute").

[15] In *Casey*, the alleged victim Kimberly was with her friends at a bar. Casey was at the same bar and began fighting with one of Kimberly's friends. After Kimberly returned home to watch television with her boyfriend Russo and his friend Chapman, Casey appeared on a ledge outside Kimberly's window. Kimberly, Russo, and Chapman went outside to investigate. Casey told Kimberly and her friends that they were surrounded by fifty people and should not try to run. Kimberly pleaded with Casey to leave. Casey told her, "Get inside bitch, you're next." *Id.* at 1071. He asked one of his associates to get his gun from the car, and he stated that he was going to kill them all. Casey then struck Russo with an aluminum bat and told Kimberly, "You're next bitch." *Id.* Casey was found guilty of intimidation.

On appeal, we vacated the conviction. *Id.* at 1073. We held that the State failed to prove that Casey threatened Kimberly to place her in fear of retaliation for a prior lawful act. *Id.* The State argued that Kimberly had been engaged in the lawful acts of "being a patron at a bar, being at her house and being a witness to Casey's attack on Russo." *Id.* However, we found that the record did not support an inference that Casey was threatening Kimberly for this particular conduct. We also noted that "Casey's threats, which consisted of statement that 'You're next bitch' and that he was going to kill her . . . do not demonstrate his reasons for threatening Kimberly or indicate that he was doing so because of any specific prior act." *Id.*

However, the intimidation statute does not require a defendant to expressly describe the victim's prior lawful act for which a defendant intends to retaliate. Moreover, it is well-settled that the State "is not required to prove intent by direct and positive evidence." *Johnson v. State*, 837 N.E.2d 209, 214 (Ind. Ct. App. 2005), *trans. denied*. A defendant's intent may be proven by circumstantial evidence alone, and knowledge and intent may be inferred from the facts and circumstances of each case. *Id.* (quoting *Lykins v. State*, 726 N.E.2d 1265, 1270 (Ind. Ct. App. 2000)).

In this case, the State alleged that the "prior lawful act" was the argument between Smith and Linda "because Linda Smith did not want McDonald's." Appellant's App. p. 97. At trial, Linda testified that earlier in the evening, she and Smith spoke and had a cordial conversation about their child's welfare. However, at approximately 10:45 p.m., Smith called and told Linda that he was

in the McDonald's drive-through and asked if Linda wanted anything to eat. Tr. p. 37. Linda replied that she was not hungry but was tired and wanted to go to bed.

[19] Linda testified that Smith "pretty quickly became agitated and angry, started name calling." *Id*. Smith was also upset about Linda's job. The State asked Linda why Smith would react so strongly to her response that she did not want McDonald's. Linda replied, "I believe that he wanted to spend some time with me that evening." *Id*. Smith then threatened Linda and stated that "he was going to split [her] chest open with an ax." Tr. p. 38.

[20] Linda's decision to refuse Smith's offer to bring her McDonald's is unquestionably a lawful act. After Linda refused the offer, Smith became upset and eventually threatened Linda. The State proved that Smith's threat was in retaliation for Linda's prior lawful act, i.e. Linda's decision that she did not want Smith to bring her food from McDonald's. For all of these reasons, we conclude that the evidence is sufficient to support Smith's intimidation conviction.

### The Amended Charging Information

[21] Smith also raises two arguments with respect to the charging information. First, he claims an improper variance between the charging information and the proof was presented at trial concerning the alleged "prior lawful act." Smith also argues that the trial court improperly granted the State's motion to amend the charging information one day before his jury trial. The State amended the

information by specifically alleging that the "prior lawful act" was an argument "because Linda Smith did not want McDonald's." Appellant's App. p. 97.

## I. Variance between the Charging Information and Proof at Trial

[22] Smith contends the State presented a material and fatal variance between the prior lawful act alleged and the evidence presented at trial.[1]

> Because the charging information advises a defendant of the accusations against him, the allegations in the pleading and the evidence used at trial must be consistent with one another. A variance is an essential difference between the two. Not all variances, however, are fatal. Relief is required only if the variance (1) misled the defendant in preparing a defense, resulting in prejudice, or (2) leaves the defendant vulnerable to future prosecution under the same evidence.

*Blount v. State*, 22 N.E.3d 559, 569 (Ind. 2014).

[23] Smith claims that at trial, the State argued that the following were prior lawful acts: 1) that Linda did not want McDonald's (the act alleged in the charging information), 2) the argument between Linda and Smith, and 3) Linda rejecting

---

[1] The State argues that Smith waived this claim by failing to raise it in the trial court. However, any error between the pleading and proof at a criminal trial is fundamental because a defendant has a constitutional right to be informed of the nature of the accusation in sufficient detail to enable him to prepare his defense. *See Blackmon v. State*, 32 N.E.3d 1178, 1184 (Ind. Ct. App. 2015) (quoting *Myers v. State*, 510 N.E.2d 1301, 1366-67 (Ind. 1987)) (explaining that "[c]onsistency between the allegations charged and the proof adduced is required out of deference for the accused's constitutional right to be informed of the nature and cause of the accusation in sufficient detail to enable her to prepare her defense, to protect her in the event of double jeopardy, and to define the issues so that the court will be able to determine what evidence is admissible and to pronounce judgment"). Therefore, we address Smith's claim on its merits. *See Young v. State*, 30 N.E.2d 719, 726 (Ind. 2015) (stating "[a]n error is fundamental, and thus reviewable despite failure to object, if it made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm").

Smith, i.e. not allowing him to come to her house. However, Smith does not explain how this claimed variance between the charging information and proof at trial prevented him from preparing and presenting his defense. *See* Appellant's Br. at 19 (broadly stating that "[i]t follows that the prior lawful act had to be identified in the charging information with sufficient specificity so as not to mislead Smith in the preparation of his defense" with no specific argument that Smith suffered any prejudice in presenting his defense).

[24] The State's theory of the case was that Smith's offer to bring McDonald's to his estranged wife Linda was Smith's attempt to spend time with her, and when she rejected his offer of McDonald's, Smith was angered to the point where he threatened her in retaliation. The record has no direct evidence from which a fact-finder could conclude why Smith became so angry when Linda refused his offer to bring her McDonald's. However, direct evidence is not required. *See Johnson*, 837 N.E.2d at 214.

[25] Linda testified that she and Smith had a cordial discussion earlier in the day concerning their son's welfare. Howver, after she rejected his offer later that evening, Smith "pretty quickly became agitated and angry, [and] started name calling." Tr. p. 37. Linda stated that she believed that Smith wanted to spend time with her that evening. *Id*. Linda testified that is the reason Smith reacted so strongly to her statement that she did not want McDonald's. Tr. p. 38.

[26] Prior to trial, Smith's counsel deposed Linda, and Smith had the probable cause affidavit and additional discovery materials. Smith had pretrial knowledge of

the substance of Linda's testimony and was fully advised of the charge against him. At trial, Smith did not deny threatening Linda during their argument but argued that he had not committed intimidation because his threat was not made in retaliation for any prior lawful act.

[27] For all of these reasons, we conclude that Smith has not established a fatal variance between the charging information and the evidence presented at trial.

## II. Pretrial Amendment to the Charging Information

[28] Finally, Smith argues that the trial court abused its discretion when it granted the State's motion to amend the charging information on the day before his jury trial began. Indiana Code section 35-34-1-5(b) provides in pertinent part that the State may substantively amend a charging information "before the commencement of trial . . . if the amendment does not prejudice the substantial rights of the defendant." "A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights." *Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009) (citations omitted); *see also Sides v. State*, 692 N.E.2d 1310, 1313 (Ind. 1998) (explaining that "[u[ltimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges").

[29] As we concluded above, Smith was fully advised of the charges against him. He has not established that the amendment to the charging information prevented

him from preparing or presenting his defense to the intimidation charge. Therefore, under Indiana Code section 35-34-1-5(b), the trial court properly allowed the amendment to the charging information the day before trial commenced.

## Conclusion

[30] The State presented sufficient evidence to prove that Smith committed intimidation, and Smith has not established any error in the charging information that would require us to reverse his conviction.

[31] Affirmed.

Robb, J., and Brown, J., concur.