## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2016, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Asa Hairston,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 30, 2016

Court of Appeals Case No.
49A04-1606-CR-1267

Appeal from the Marion Superior Court

The Honorable Barbara Crawford, Judge

Trial Court Cause No.
49G09-1506-CM-22009

**Crone, Judge.**

## Case Summary

Asa Hairston appeals his conviction following a bench trial for class A misdemeanor resisting law enforcement. His sole assertion on appeal is that the State presented insufficient evidence to sustain his conviction. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

On June 18, 2015, Indianapolis Metropolitan Police Department Officers Sara Didandeh and D. Wright[1] responded to a report that Hairston was in the middle of the street, dressed only in underwear,[2] covered in blood, holding a hammer, and yelling and screaming. In conducting a welfare check on the situation, the officers located Hairston on a nearby porch. The officers noted that he had blood coming from his head and cuts on his wrists that were actively bleeding, and that he seemed a little disoriented. The officers also observed a hammer in a bucket sitting next to him. The officers determined that it was necessary to place Hairston in handcuffs for his own safety while they investigated further. Officer Wright told Hairston to put his hands behind his back. Hairston slowly put his hands behind his back, but when Officer Wright tried to grab his hands to put the handcuffs on, Hairston pulled his hands away. Officer Wright tried again, this time being able to get a hold of

---

[1] The record provides only the initial of Officer Wright's first name.

[2] Officer Didandeh described Hairston's attire as "like a leotard" or "wrestling thing." Tr. at 11.

Hairston's fingers, but Hairston "jerked away" again. Tr. at 15. On a third attempt, Officer Wright was finally able to handcuff Hairston.

[3] Officer Wright escorted Hairston off the porch, and as he held onto the handcuffs to try to control Hairston, Hairston kept "pulling away." *Id*. at 16. Hairston then "instantly started squirming and flailing his arms." *Id*. Officer Didandeh observed that Hairston was quickly twisting his upper body and moving his shoulders forward in an attempt to break free of Officer Wright's hold and run away. Both officers repeatedly commanded Hairston to "stop resisting." *Id*. at 31. Because Officer Didandeh could see that Officer Wright was losing his hold on Hairston, she grabbed Hairston's arm, and the officers took him to the ground. Hairston continued to try to get up as he was on the ground, and he kicked at the officers and used his legs to push the officers off him, despite the officers' continued commands for Hairston to stop resisting. An ambulance arrived, and Hairston was sedated, transported to the hospital, and placed in "immediate detention" with the Marion County Sheriff's Department. *Id*. at 24.

[4] The State charged Hairston with class A misdemeanor resisting law enforcement and class B misdemeanor criminal mischief. A bench trial was held on February 9, 2016. At the conclusion of the trial, Hairston moved for a directed verdict on the criminal mischief charge. The trial court granted Hairston's motion. The trial court found Hairston guilty of class A misdemeanor resisting law enforcement. The court sentenced him to 365 days,

with thirty-four days of credit time, 331 days suspended, ninety days of probation, and twenty hours of community service. This appeal ensued.

## Discussion and Decision

[5] Hairston contends that the State presented insufficient evidence to support his conviction. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable inferences drawn therefrom that support the conviction, and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id*. In short, if the testimony believed by the trier of fact is enough to support the conviction, then the reviewing court will not disturb it. *Id*. at 500.

[6] To convict Hairston of class A misdemeanor resisting law enforcement, the State was required to prove that he knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer while the officer was lawfully engaged in his or her duties. *See* Ind. Code § 35-44.1-3-1(a)(1). Hairston first claims that the State failed to prove that he acted forcibly. Our supreme court has explained,

> In *Spangler v. State*, we held that the word "forcibly" is an essential element of the crime and modifies the entire string of verbs—resists, obstructs, or interferes—such that the State must show forcible resistance, forcible obstruction, or forcible interference. 607 N.E.2d 720, 722-23 (Ind. 1993). We also held that the word meant "something more than mere action." *Id*. at

724. "[O]ne 'forcibly resists' law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." *Id.* at 723. "[A]ny action to resist must be done with force in order to violate this statute. It is error as a matter of law to conclude that 'forcibly resists' includes all actions that are not passive." *Id*. at 724.

But even so, "the statute does not demand complete passivity." *K.W. v. State,* 984 N.E.2d 610, 612 (Ind. 2013). In *Graham v. State,* we clarified that "[t]he force involved need not rise to the level of mayhem." 903 N.E.2d 963, 965 (Ind. 2009). In fact, even a very "modest level of resistance" might support the offense. *Id.* at 966 ("even 'stiffening' of one's arms when an officer grabs hold to position them for cuffing would suffice").

*Walker v. State*, 998 N.E.2d 724, 726-27 (Ind. 2013).

[7] The evidence most favorable to the conviction shows that although Hairston initially complied with Officer Wright's command to place his hands behind his back, he repeatedly pulled and jerked his hands away from Officer Wright's grasp. It took Officer Wright three attempts to handcuff Hairston. Then, as Officer Wright escorted Hairston off the porch, Hairston kept pulling away before escalating his resistance to twisting his body and flailing his arms to try to break Officer Wright's hold. After the officers were forced to take Hairston to the ground, Hairston kicked at them and used his legs to push them away. This evidence is more than sufficient to show that Hairston exercised at the very least a modest exertion of strength, power, or violence to impede the officers' lawful execution of their duties.

[8] Hairston also maintains that the State failed to prove that he acted knowingly or intentionally because he "might have experienced some sort of psychotic episode" and his behavior "might have not been because of his knowing or intentional acts." Appellant's Br. at 12. We are unpersuaded. It is well settled that the State is not required to prove intent by direct and positive evidence. *Johnson v. State*, 837 N.E.2d 209, 214 (Ind. Ct. App. 2005), *trans. denied* (2006). Indeed, a defendant's intent may be proven by circumstantial evidence alone, and knowledge and intent may be inferred from the facts and circumstances of each case. *Id*. Here, although one of the responding officers described Hairston as seeming "a little disoriented," *see* Tr. at 12, the evidence indicates that Hairston clearly understood the command to place his hands behind his back for handcuffing, because he initially complied before beginning to resist. His subsequent and continued efforts to break free of the officers despite their commands to stop resisting supports a reasonable inference that he did so knowingly or intentionally. Hairston's alternative explanations that "might" explain his behavior are simply requests for us to reweigh the evidence, which we cannot do. The State presented sufficient evidence to support Hairston's conviction for class A misdemeanor resisting law enforcement, and therefore we affirm his conviction.

[9] Affirmed.

Riley, J., and Altice, J., concur.